W.P.

07 CV 3311

ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
LOUIS I. OCTOBRE,

                              Plaintiff                  COMPLAINT
                                                                    JURY TRIAL DEMANDED

   -Against-

RADIO SHACK CORPORATION,
                              Defendant
------------------------------------------------------------X



Plaintiff, LOUIS I. OCTOBRE, by his attorneys, LAW OFFICES OF AMBROSE WOTORSON, alleges as follows:

    I.      **INTRODUCTION**

    1.      This is an action pursuant to 42 U.S.C. Section 1981, *et seq*, and the New York State Human Rights Law, to vindicate the civil rights of plaintiff. Plaintiff contends that defendant altered the terms, conditions, and privileges of his employment by subjecting him to racially disparate disciplinary measures, including, but not limited to, wrongful termination.

    II.     **JURISDICTION**

    2.      This Court has jurisdiction over this action under 42 U.S.C. Section 1981, *et seq*. Venue is proper, as the operative events occurred within this judicial district. Moreover, there is complete diversity of the parities since plaintiff is a resident of New York and defendant's principal place of business is located in Texas.

III. <u>PARTIES</u>

3. LOUIS I. OCTOBRE (hereinafter, "plaintiff") resides in, at 3 Eagle View Court, Monsey, New York 10952.

4. RADIO SHACK CORPORATION (hereinafter "Radio Shack," or "defendant") is a for profit electronics sales company. Its principal place of business located at 300 Radio Shack Circle, Fort Worth, Texas 76102.

IV. <u>FACTUAL AVERMENTS</u>

5. At all relevant times, plaintiff was employed with defendant as a Senior Store Manager, located at 1BB Xavier Drive, Yonkers, New York 10704, otherwise known as the "Yonkers Cross County Mall."

6. Plaintiff's performance has been fully satisfactory at all relevant times since his hire.

7. However, defendant altered the terms, conditions, and privileges of plaintiff's employment by subjecting him to racially disparate disciplinary measures in the following ways:

   a. Plaintiff was a Senior Store Manager assigned to the Westchester Cross County Mall.

   b. Plaintiff's national origin is Haitian, and he is black. He self-identifies as African-American.

   c. On or about December 13, 2006, Millicent Quinones, who is a Hispanic district supervisor, informed plaintiff that he was being terminated from his position as a Senior Store Manager.

   d. As a consequence of this termination, plaintiff lost a yearly salary, along with commissions and bonuses, of approximately $98,000 a year.

e.  Millicent Quinones told plaintiff that there were three reasons why defendant was terminating his services.

f.  First, she claimed that plaintiff has failed to report the theft by an employee under his charge. In fact, Plaintiff *did* inform his superiors of the employee's misconduct.

g.  Second, she claimed that there was a $5,000 inventory loss at the store which Plaintiff had been assigned to manage. In fact, Plaintiff *did* inform his superiors of the amount of the loss.

h.  Third, Quinones told plaintiff that he was being terminated because he failed to regularly do weekly "cage counts" of expensive items in the store assigned to his charge. However, Quinones had previously instructed Plaintiff to focus on sales and to ignore "cage counts" in the last quarter of 2006.

i.  The reason's given for Plaintiff's termination were not only pretextual, but they were utterly discriminatory as well.

j.  Indeed, other employees -- most of whom were Hispanic -- engaged in similar conduct and they were not terminated.

k.  For example, on information and belief, a non-black Hispanic Store Manager in the Bronx Baychester Shopping Center location failed to consistently conduct a "cage count," and his store sustained huge losses as a result.

l.  On information and belief, Radio Shack's upper management – and Millicent Quinones in particular -- was well aware of this manager's

deficiencies. Moreover, by October 2006, it was determined that the Assistant Manager under this Store Manager's charge allegedly had been stealing merchandise. Indeed, numerous telephones and digital cameras were missing.

m. On information and belief, the Manager in question failed to report this theft, and he was well aware that this Assistant Manager was involved in the alleged theft.

n. Importantly, the Assistant Manager – who allegedly had done the stealing -- was terminated instead of the Store Manager in charge. On information and belief, the Store Manager in question is still employed with Radio Shack.

o. On information and belief, a second similarly-situated non-black Hispanic Senior Store Manager at store number 2632 located at 2194 White Plains Road in the Bronx, had an inventory loss of over $20,000 worth of merchandise. This extensive inventory loss occurred while he was in store 2665, in part, because he did not keep track of losses, nor did he conduct regular cage counts. This manager, on information and belief, was not terminated, but demoted to his current post in store 2632.

p. A third similarly-situated non-black Hispanic senior store manager at a store located on 161 Street in the Bronx lost a very large night deposit and he was not terminated.

q. Clearly, Senior Management at Radio Shack and Millicent Quinones in particular, have exhibited a pattern racial bias.

8. As a further proximate result of defendant's illegal acts towards plaintiff, plaintiff will suffer a loss of earnings, bonuses and other employment benefits.

9. As a further proximate result of defendant's illegal actions towards plaintiff, plaintiff has suffered impairment and damage to plaintiff's good name and reputation.

10. As a further proximate result of defendant's illegal actions towards plaintiffs plaintiff has suffered mental anguish and emotional injury.

11. As a further proximate result of defendant's illegal actions towards plaintiff, plaintiff has been unable to find comparable employment with comparable pay, despite his best efforts to do so, and he has suffered extraordinary consequential damages as a result..

12. Defendant's actions were willful, outrageous and were malicious, were intended to injure plaintiff, and were done with reckless indifference to plaintiff's protected rights, entitling plaintiff to punitive and/or liquidated damages.

V. <u>CAUSES OF ACTION</u>

<u>FIRST CAUSE OF ACTION</u>

13. Plaintiff hereby repeats and realleges each allegation in each numbered paragraph above.

14. By discriminating against plaintiff on account of his race, defendant violated 42 U.S.C. Section 1981 *et seq*.

<u>SECOND CAUSE OF ACTION</u>

15. Plaintiff hereby repeats and realleges each allegation in each numbered paragraph above.

16. By discriminating against plaintiff on account of his race, defendant violated Section 296 of the New York Human Rights Law.

VI. **PRAYER FOR RELIEF**

WHEREFORE, plaintiff prays that this Court grants to him judgment containing the following relief:

    a. An award of damages to be determined at the time of trial to compensate plaintiff for mental anguish, humiliation, embarrassment, emotional injury, loss of pay and loss of benefits;

    b. An award of punitive and/or liquidated damages to be determined at the time of trial;

    c. An award of reasonable attorney fees and the costs of this action and,

    d. Such other and further relief as this Court may deem just and proper; and

    e. Reinstatement or any other equitable relief available, including an injunction against the adverse actions complained of herein.

Dated: Brooklyn, New York
April 23, 2007

Respectfully Submitted,
Law Offices of Ambrose Wotorson, P.C.
By_____
Ambrose W. Wotorson (AWW—2412)
26 Court Street
Suite 1811
Brooklyn, New York 11242

718-797-4861