UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LOUIS I. OCTOBRE,

                    Plaintiff,

    -v-

RADIO SHACK CORPORATION,

                    Defendant.

Case No. 07-CV-3311 (KMK)

OPINION & ORDER

Appearances:

Ambrose Wotor Wotorson, Jr, Esq.
Law Offices of Ambrose Wotorson
Brooklyn, NY
*Counsel for Plaintiff*

Patrick Michael Stanton, Esq.
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
New York, NY
*Counsel for Defendant*

KENNETH M. KARAS, District Judge:

Plaintiff, Louis I. Octobre ("Plaintiff" or "Octobre"), alleges that he was fired by

Defendant, Radio Shack Corporation ("Defendant" or "Radio Shack"), because of racial

discrimination, in violation of 42 U.S.C. § 1981 ("§ 1981") and N.Y. Executive Law § 296

(McKinney 2009) ("NYSHRL").  (Compl. ¶¶ 13-16.)  Defendant moves for summary judgment.

For the reasons stated herein, Defendant's motion is granted.

## I.  Background

### A. Plaintiff's Employment and Subsequent Dismissal

Plaintiff was employed by Defendant in various capacities from October 5, 1995, until

December 13, 2006.  (Def.'s Statement of Undisputed Material Facts Pursuant to Local R. 56.1

("Def.'s 56.1 Stmt.") ¶ 1; Pl.'s 56.1 Statement in Opp'n to Defs.' [sic] Mot. for Summ. J. (Pl.'s 56.1 Stmt.") ¶ 1.)[1]  At the time of his termination, Plaintiff worked as a Senior Store Manager. (Pl.'s 56.1 Stmt. ¶ 1.)

In or about "late 2006," Defendant's Loss Prevention Services conducted an inventory investigation of the store managed by Plaintiff.  (*Id.* ¶ 4.)  The Parties do not agree on the exact amount of the Plaintiff's inventory loss, but both agree that it was somewhere at or exceeding $5,000.  (*Id.*; Pl.'s Mem. of Law in Opp'n to Defs.' [sic] Mot. for Summ. J. ("Pl.'s Mem.") 5.) At the conclusion of the investigation, Plaintiff was fired by his supervisor, District Manager Millicent Quinones ("Quinones"), who cited three reasons for his termination: "(a) failing to report employee theft, (b) [the] inventory loss at the store [P]laintiff managed, and (c) failing to conduct weekly cage counts . . . ."  (Mem. of Law in Supp. of Def.'s Mot. for Summ. J. ("Def.'s Mem.") 4; *see* Compl. ¶¶ 7(e)-(h).)  Radio Shack replaced Plaintiff with another African-American employee.  (Decl. of Lynelle J. Slivinski, Esq., in Supp. of Def.'s Mot. for Summ. J. ("Slivinski Decl.") Ex. J, at unnumbered second page.)  Plaintiff maintains that these reasons were pre-textual, and that race was the decisive factor in the decision to terminate his employment.  (Pl.'s Mem. 3-8.)

B. Thefts at a Store Managed by Plaintiff

Both Parties reference Plaintiff's alleged failure to report employee theft, but the major dispute between the Parties appears to concern a customer theft.  Sometime prior to December 9, 2006, a customer stole a laptop from the store managed by Plaintiff.  (Def.'s 56.1 Stmt. ¶ 6; Aff.

---

[1]Hereinafter, where a statement of fact is undisputed, the Court will cite to Plaintiff's 56.1 Statement only.

of Ambrose W. Wotorson in Opp'n to Defs.' [sic] Mot. for Summ. J. ("Wotorson Aff.") Ex. 7 ¶¶

11-12; Pl.'s Mem. 4.)  Plaintiff asserts that he reported the theft, and Defendant asserts that he

did not properly do so.  (Wotorson Aff. Ex. 7 ¶ 11; Decl. of Paul Votto in Supp. of Def.'s Mot.

for Summ. J. ("Votto Decl.") Ex. 6.)  Defendant's view is based on the fact that Plaintiff never

filled out a "Loss and Damage Report," which is the formal way to report merchandise loss.

(Votto Decl. Ex. 2, at D528 (outlining how a Loss and Damage Report could be filed); *id.* Ex. 6

(stating that Plaintiff never filed "an L&D").)  Plaintiff's view is based on his belief that he noted

the inventory loss in an inventory report and that this procedure had been acceptable in the past.

(Wotorson Aff. Ex. 7 ¶ 11.)

     A subsequent employee theft also occurred at the store Plaintiff managed.  On December

9, 2006, a sales associate conducted a fraudulent refund for $270.93.  (Votto Decl. Ex. 4; Def.'s

56.1 Stmt ¶ 6 *accord* Pl.'s 56.1 Stmt. ¶ 6.)  The Parties do not dispute Plaintiff's reporting of the

employee theft, instead focusing on the report, or lack thereof, of the laptop theft.  (Def.'s Mem.

7-9; Pl.'s Mem. 4-5; Reply Mem. of Law in Supp. of Def's Mot. for Summ. J. ("Reply Mem.")

3-4.)  During a subsequent loss investigation, the sales associate claimed to have conducted the

fraudulent refund because Plaintiff pressured her to pay for the stolen laptop.  (Votto Decl. Ex. 5,

at D11-12.)[2]  Plaintiff denies giving any such instruction to the sales associate.  (Wotorson Aff.

Ex. 7 ¶ 12.)  At her deposition, Quinones could not recall if Radio Shack believed Plaintiff.  (*Id.*

Ex. 6, at 134 ("Q. . . . [D]id the company disbelieve Mr. Octobre?  A.  I don't think so.  I'm not

sure.  I don't have an answer for that.").)

_____

     [2]According to the sales associate, Plaintiff believed that the sales associate was
responsible for the earlier theft of the laptop (by a customer), and that she would have to pay for
the loss.  (Votto Decl. Ex. 4.)  After a loss investigation, the sales associate was terminated.  (*Id.*)

C. Cage Counts

There are two kinds of product checks that Defendant normally requires at its stores.  The first is known as an "inventory," which is a "periodic count[] of all merchandise in the store." (Reply Mem. 5; Slivinski Decl. Ex. G, at 114-16.)  Inventories are conducted once every three or four months.  (Slivinski Decl. Ex. G, at 114-16.)  The second kind of product check is a "cage count," which is performed weekly and involves a physical count of small, high-value merchandise such as "wireless handsets [and] digital cameras," which are secured in a locked area.  (Reply Mem. 5 & n.1; Votto Decl. Ex. 2, at 2 (stating that "[a]t minimum, a physical count must be performed weekly on all secured merchandise by the Store Manager").)  Plaintiff did not conduct cage counts between early October and December 2006.  (Votto Decl. Ex. 3; Pl.'s Mem. 6.)

D. Votto Investigations

As previously noted, the store Plaintiff managed sustained an inventory loss of at least $5,000 in or about late 2006.  (Pl.'s 56.1 Stmt. ¶ 4; Pl.'s Mem. 5.)  As a result of this inventory loss, Paul Votto, a Loss Prevention Manager for Radio Shack, conducted a loss investigation. (Votto Decl. ¶¶ 1-2.)  Votto's investigation concluded that Plaintiff had failed to adequately follow the cage count and inventory procedures.  (*Id.* Ex. 1.)  He also prepared a memorandum, which was sent to Quinones, that detailed Plaintiff's policy violations.  (*Id.* Ex. 3.)  Votto was also responsible for investigating the sales associate's theft, and prepared a statement outlining his findings.  (*Id.* Ex. 4.)  This investigation also resulted in a memorandum, which was sent to Quinones, and which included the sales associate's allegations regarding Plaintiff's behavior, as well as a statement indicating that Plaintiff admitted applying improper pressure to the sales

4

associate.  (*Id.* Ex. 6.)

E. Procedural History

On April 24, 2007, Plaintiff filed his complaint alleging wrongful termination on the basis of race in violation of § 1981 and NYSHRL.  (Compl. ¶¶ 13-16.)  The case was referred to Magistrate Judge Fox for all purposes on April 24, 2007, pursuant to the standing order of Chief Judge Kimba M. Wood.  The case was re-assigned to this Court on August 6, 2007.  Defendant moved for summary judgment on April 1, 2009 (Dkt. No. 24), and the motion was fully submitted by May 12, 2009, (Dkt. No. 37).[3]

## II.  Discussion

A. Standard of Review

1. Summary Judgment

Summary judgment shall be granted when "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant . . . ."  *Lucente v. I.B.M. Corp.*, 310 F.3d 243, 253 (2d Cir. 2002).  To defeat Defendant's Motion for Summary Judgment, Plaintiff must make a sufficient showing of proof on each element of his claim for which he bears the burden of proof.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)

---

[3]Though Plaintiff initially alleged only discrimination on the basis of race (Compl. ¶¶ 14, 16), Plaintiff's Memorandum of Law suggests that Plaintiff was discriminated against on the basis of both race and national origin, (*see, e.g.*, Pl.'s Mem. 6-7).  The Court will be consistent with the Complaint and use the language of racial discrimination, but notes that none of the analysis would change if the Court were discussing discrimination on the basis of national origin.

(holding that the moving party is not required "to produce evidence showing the absence of a genuine issue of material fact"); *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 303 (2d Cir. 2003) ("[S]ummary judgment should only be granted if[,] after discovery, the nonmoving party has failed to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof." (internal quotation marks, brackets and emphasis omitted)).

The Supreme Court has commented that "trial courts should not 'treat discrimination differently from other ultimate questions of fact.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 524 (1993) (internal quotation marks omitted)). "'The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant].'" *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 743 (2d Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)) (alterations in original). While it is difficult for courts to ascertain discriminatory intent, courts must "carefully distinguish between evidence that allows for a reasonable inference of discrimination and evidence that gives rise to mere speculation and conjecture." *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 448 (2d Cir. 1999). In doing so, courts must "'interpret ambiguities in the evidence in the light most favorable to the plaintiff.'" *Sassaman v. Gamache*, 566 F.3d 307, 313 (2d Cir. 2009) (quoting *Tomassi v. Insignia Fin. Group, Inc.*, 478 F.3d 111, 116 (2d Cir. 2007)); *see also Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) ("The evidence of the party opposing summary judgment is to be believed, and all justifiable inferences are to be drawn in that party's favor." (internal quotation marks and brackets omitted)).

### 2. Section 1981 and NYSHRL

Plaintiff brings this action seeking relief under § 1981 and NYSHRL.  (Compl. ¶ 1.) Section 1981 guarantees that all persons shall have the same "enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship" "as is enjoyed by white citizens," and, by its own terms, applies to "protect[ion] against impairment by nongovernmental discrimination."  42 U.S.C. § 1981.  NYSHRL defines "unlawful discrimnatory practice[s]" to include "discharg[ing] from employment" "because of an individual's . . . race, . . . color, [or] national origin . . . ."  NYSHRL § 296(a).  The two causes of action are evaluated under the same standard, which is also the standard used for Title VII claims.  *See Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 565 & n.1 (2d Cir. 2000) (applying the same standard for failure to promote claims brought under Title VII and NYSHRL § 290); *Brennan v. Metro. Opera Ass'n, Inc.*, 192 F.3d 310, 317 n.2 (2d Cir. 1999) ("Employment discrimination claims brought under the NYSHRL are analyzed identically to claims under the ADEA and Title VII."); *Yarde v. Good Samaritan Hosp.*, 360 F. Supp. 2d 552, 559 (S.D.N.Y. 2005) (applying the same standard to claims made under Title VII, § 1981, and NYSHRL).

The Court will therefore apply the familiar *McDonnell-Douglas* burden shifting framework to both claims.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973).  Under that standard, Plaintiff must first establish a prima facie case.  *See Sassaman*, 566 F.3d at 312; *Holcomb v. Iona Coll.*, 521 F.3d 130, 138 (2d Cir. 2008); *Sanders v. N.Y. City Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004).  Once that burden is met, "'the burden shifts to the defendant, which is required to offer a legitimate, non-discriminatory rationale for its actions.'"  *Sanders*, 361 F.3d at 755 (quoting *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir.

2003)); *see also Yarde*, 360 F. Supp. 2d at 559 (same).  Once Defendant has met its burden,

Plaintiff "may no longer rely on the presumption of discrimination raised by the prima facie

case," and must demonstrate "sufficient evidence upon which a reasonable jury could conclude

by a preponderance of the evidence that the decision to fire him" was racially motivated.

*Holcomb*, 521 F.3d at 141; *see also Yarde*, 360 F. Supp. 2d at 559 (stating that a plaintiff's

burden at the third stage of the burden-shifting analysis is to "prove both that the reason given by

defendant was pretextual and that the real reason for the adverse employment action was

unlawful discrimination").  The burden of proving that the employer acted with discriminatory

intent, however, remains with the plaintiff at all times.  *See St Mary's Honor Ctr.*, 509 U.S. at

507 ("[T]he ultimate burden of persuading the trier of fact that the defendant intentionally

discriminated against the plaintiff remains at all times with the plaintiff." (internal quotation

marks omitted)); *Patterson v. County of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004) (same);

*Dawkins v. Witco Corp.*, 103 F. Supp. 2d 688, 695 (S.D.N.Y. 2000) (same).  To defeat summary

judgment, therefore, Plaintiff must "establish a genuine issue of material fact either through

direct, statistical or circumstantial evidence . . . as to whether it is more likely that a

discriminatory reason motivated the employer to make the adverse employment decision."  *Gallo*

*v. Prudential Residential Servs., Ltd.*, 22 F.3d 1219, 1225 (2d Cir. 1994).

    B. Plaintiff's Prima Facie Case

    To establish a prima facie case, Plaintiff must show "'(1) that he belonged to a protected

class; (2) that he was qualified for the position he held; (3) that he suffered an adverse

employment action; and (4) that the adverse employment action occurred under circumstances

giving rise to an inference of discriminatory intent.'"  *Sassaman*, 566 F.3d at 312 (quoting

*Holcomb*, 521 F.3d at 137); *see also Sanders*, 361 F.3d at 755 (same); *Yarde*, 360 F. Supp. 2d at

559 (same). "'[P]laintiff's burden of establishing a *prima facie* . . . case is *de minimis.*'"

*Sassaman*, 566 F.3d at 312 (quoting *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 467 (2d

Cir. 2001)) (emphasis in original).  However, "'[i]t is well established that mere conclusory

allegations are insufficient to establish a cause of action for a violation of civil rights.'"  *Mian v.*

*Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1088 (2d Cir. 1993) (quoting *Mazurek v.*

*Wolcott Bd. of Educ.*, 815 F. Supp. 71, 77 (D. Conn. 1993)); *see also Reyes v. Fairfield Props.*,

No. 08-CV-74, 2009 WL 3063082, at *12 (E.D.N.Y. Sept. 24, 2009) (noting "that even against

th[e] liberal pleading standard, conclusory assertions are not entitled to the assumption of truth,

and factual allegations must plausibly support the reasonable inference that plaintiffs are entitled

to relief"); *Younger v. City of New York*, 480 F. Supp. 2d 723, 733 (S.D.N.Y. 2007) (granting

summary judgment when the plaintiff sought to establish an element of his discrimination claim

on "conclusory assertions" and "anecdotal evidence of other alleged instances" of similar

conduct by defendant).  Therefore, Plaintiff must demonstrate that "the adverse employment

action occurred under circumstances giving rise to an inference of discrimination."  *Yarde*, 360

F. Supp. 2d at 559.

Defendant does not dispute that Plaintiff is a member of a protected class and that he

suffered an adverse employment action (the first and third prongs of the prima facie case), but

argues that he has shown neither that he was performing satisfactorily at his job (the second

prong), nor that there exists sufficient facts from which to draw an inference of racial

discrimination (the fourth prong).  (Def.'s Mem. 7, 9.)  The fourth element is addressed below,

but the Defendant's arguments on the second element can be summarily rejected.  "[P]laintiff

9

must show only that he possesses the basic skills necessary for performance of the job.  As a result, especially when discharge is at issue and the employer has already hired the employee, the inference of minimal qualification is not difficult to draw." *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 92 (2d Cir. 2001) (internal quotation marks, citation and brackets omitted); *see also Bang v. IBM Corp.*, 600 F. Supp. 2d 430, 434 (E.D.N.Y. 2009) (same). Defendant does not allege any facts suggesting that Plaintiff did not have the minimal qualifications required for the position that Defendant employed him to perform.  Indeed, Plaintiff worked for Defendant for over 11 years.  Therefore, Plaintiff has met the second element of his prima facie case.[4]

Plaintiff advances two arguments to meet the fourth element of his prima facie case. First, Plaintiff disputes the reasons for his termination.  Second, Plaintiff claims disparate treatment based on dissimilar treatment of three Hispanic Radio Shack employees.[5]

_____

[4]Though Plaintiff has established that he was qualified for his job, the record contains documents revealing that Plaintiff was reprimanded for various acts of misconduct. (*See, e.g.*, Slivinski Decl. Ex. L, at D62 (reprimanding Plaintiff for missing a mandatory meeting); *id.* Ex. L, at D63 (reprimanding Plaintiff for "inappropriate" touching of another employee and "provocative language"); *id.* Ex. L, at D128 (reprimanding Plaintiff for failing to make a "timely bank deposit").)  Also, while Plaintiff claims Quinones complimented him for inventory control, Quinones has no such recollection.  (*Compare* Wotorson Aff. Ex. 7 ¶ 5 *with id.* Ex. 6, at 59.)

[5]Though Plaintiff makes no reference to it in his Memorandum of Law, Plaintiff testified that when he first became a store manager under Quinones, Plaintiff tried to "mix the staff up a little bit" because the employees were "98 percent Hispanic" and that this "did not go too well with [Quinones]," but that she did "not try to block" the hiring of non-Hispanic employees. (Slivinski Decl. Ex. C, at 205-06.)  Plaintiff also testified that Quinones "would tell [Plaintiff] that . . . Hispanic employees are better."  (*Id.* Ex. C, at 205.)  Plaintiff did not testify that Quinones continued to behave as if Hispanic employees were "better," or that she behaved in that way at any time other than when Plaintiff first started working for Quinones.  Because approximately a year and a half passed between this alleged statement and Plaintiff's termination (Wotorson Aff. Ex. 6, at 101; Pl.'s 56.1 Stmt. ¶ 1), and because Plaintiff did not even mention it in his opposition to Defendant's motion, the Court accords it little weight, especially as Plaintiff

1. The Reasons for Plaintiff's Termination

Quinones gave three reasons for Plaintiff's termination: "(a) failing to report employee theft, (b) [the] inventory loss at the store [P]laintiff managed, and (c) failing to conduct weekly cage counts . . . ." (Def.'s Mem. 4.)  As noted above, the Parties do not dispute that the inventory loss occurred, though they do dispute the exact amount of the loss.  (Pl.'s 56.1 Stmt. ¶ 4.)

In reference to the customer theft of a laptop, Plaintiff offers his own testimony as evidence that he reported the theft via a note in one of the inventory reports, that he previously noted missing items in other inventory reports, and that this method of reporting had always been acceptable.  (Wotorson Aff. Ex. 7 ¶ 11.)  The inventory reports themselves have not been made available to the Court by the Parties, but the Court will assume that Plaintiff did report the theft in the corresponding inventory report.

Defendant counters with several pieces of evidence.  First, Defendant offers the Votto investigation memorandum, which states that Plaintiff "never notified me or [Quinones] regarding the missing laptop," that Plaintiff "failed to put through a[] [Loss and Damage

---

was replaced by an African-American.  Indeed, under the law, this isolated comment does not by itself merit denial of summary judgment.  *See Tomassi*, 478 F.3d at 115 (explaining "that the more remote and oblique the [discriminatory] remarks are in relation to the employer's adverse action, the less they prove that the action was motivated by discrimination"); *Slattery*, 248 F.3d at 92 n.2 (characterizing remarks "unrelated to [plaintiff's] discharge" as "'stray remarks'" and stating that the court "need not discuss them"); *Abdu-Brisson.*, 239 F.3d at 468 ("While . . . the stray remarks of a decision-maker, without more, cannot prove a claim of employment discrimination, . . . when 'other indicia of discrimination are properly presented, the remarks can no longer be deemed 'stray,' and the jury has a right to conclude that they bear a more ominous significance.'" (internal citation omitted) (quoting *Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 56 (2d Cir. 1998))).  Furthermore, as noted below, the statistical evidence, such as it is, refutes any suggestion that Quinones unlawfully favored Hispanic managers.

Report]," and that Plaintiff "admitted to not putting through" a Loss and Damage Report.  (Votto

Decl. Ex. 6.)  In fact, according to Votto's memorandum, Plaintiff stated that his failure to put

through such a report "didn't make a difference because [Plaintiff] was doing an inventory the

following week," i.e. that Plaintiff *would* indicate the theft on an inventory report, not that he had

already done so.  (*Id.*)  Second, Defendant offers evidence regarding the ways in which such a

loss could be reported.  While Radio Shack permits its employees to report theft in several ways,

the use of inventory reports is not allowed.  (Slivinski Decl. Ex. G, at 96-97 (mentioning email,

oral communication, "declared theft report[s]," and "P & L report[s]," but specifically excluding

noting theft on "inventory report[s]"); *id.* Ex. H, at 23-24 (stating that regardless of notations on

inventory reports, a Loss and Damage Report should be "put through").)

 With regard to the subsequent employee-theft involving the cash register, there is

conflicting evidence regarding whether Plaintiff initially admitted telling a sales associate that

she had to pay for the stolen laptop.  The report on the investigation conducted by Votto

indicates that Plaintiff admitted telling the sales associate she had to pay for the laptop.  (Votto

Decl. Ex. 6.)  Testimony by Quinones, who did not conduct the investigation, suggests that

Plaintiff did not make that statement to Votto.  (Wotorson Aff. Ex. 6, at 134.)  Plaintiff states that

he never gave any such instruction to the sales associate.  (*Id.* Ex. 7 ¶ 12.)  Quinones could not

recall if Plaintiff was believed.  (*Id.* Ex. 6, at 134.)

 Finally, Plaintiff does not deny that he failed to make cage counts, but offers two

explanations.  (Pl.'s Mem. 6.)   The first is based on his claim of disparate treatment (discussed

below).  The second is that he had been instructed to "ignore 'cage counts' in the last quarter of

2006" by Quinones.  (Wotorson Aff. Ex. 7 ¶ 16.)  In her deposition, Quinones implies, without

directly stating, that she would not have given such an instruction.  (Slivinski Decl. Ex. G, at

115-16.)  Plaintiff also argues that he was "permitted to not conduct any inventory for [a] three

to four month period," but, as explained above, that is not relevant to his failure to conduct cage

counts, which are not the same as inventories.  (Wotorson Aff. Ex. 7 ¶ 17.)

### 2. Disparate Treatment

Plaintiff also claims that his treatment differed from that afforded to three similarly

situated Radio Shack employees, all of whom, like Quinones, were Hispanic.

### a. Hector Malpica

Hector Malpica was a store manager working under Quinones who, on April 24, 2006,

discovered and reported that he was missing ten cellular phones from his "cage."  (Votto. Decl.

Ex. 7, at D596.)  Malpica coordinated with the cellular phone company's fraud department, and

the theft of two of the phones was traced to a sales associate who was subsequently fired.  (*Id.*)

Malpica was demoted at least partly as a result of this incident.  (Wotorson Aff. Ex. 6, at 87-91.)

Plaintiff alleges that Malpica failed to conduct cage counts, but provides no admissible evidence

to that effect.  (Pl.'s Mem. 9; Pl.'s 56.1 Stmt. ¶ 13.)  Instead, Plaintiff's deposition reveals that

his accusation regarding Malpica's inventory shortcomings are not based on personal

knowledge, but on what he claims Malpica told him.  (Slivinski Decl. Ex. C, at 192.)  Such

hearsay statements are inadmissible and cannot thwart Defendant's Motion for Summary

Judgment.  *See* Fed. R. Civ. P. 56(e)(1) (requiring that affidavits supporting or opposing a Rule

56 motion "be made on personal knowledge"); *Velez v. SES Operating Corp.*, No. 07-CV-10946,

2009 WL 3817461, at *10 (S.D.N.Y. Nov. 12, 2009) (stating that plaintiff "fail[ed] to create a

triable issue of material fact" because, *inter alia*, her evidence was hearsay).[6]

### b. Henry Martinez

Plaintiff alleges, again without supporting evidence or a basis for personal knowledge, that Henry Martinez, another store manager who worked under Quinones, had very large inventory losses, did not perform cage counts, and was not terminated.[7]  (Pl.'s 56.1 Stmt. ¶ 13.) Quinones testified that Martinez did indeed have a large inventory loss, but that he followed all the "proper inventory guidelines," including reporting requirements (Slivinski Decl. Ex. G, at 45-48), thus distinguishing his conduct from Plaintiff's.  The inventory loss was due to theft by employees working under Martinez.  (*Id.* Ex. G, at 46.)  Martinez was demoted to a smaller store for failure to adequately monitor his employees.  (*Id.* Ex. G, at 47-48.)

### c. Charlie Hernandez

Charlie Hernandez was a manager who worked under Quinones.[8]  (Wotorson Aff. Ex. 6,

---

[6] The record suggests that finding physical evidence of missing cage counts may be, at this point, next to impossible.  (Wotorson Aff. Ex. 6, at 72-73 (discussing Defendant's policy of shredding this kind of documentation when it is more than one year old).)  However, Plaintiff has offered no evidence explaining how he gained personal knowledge of Malpica's, or anyone else's, cage count records, nor has Plaintiff offered any witnesses who themselves have personal knowledge of these events.  The Court is not required to credit such speculation or hearsay.  *See Hayut*, 352 F.3d at 743 (stating that "[t]he mere existence of a scintilla of evidence" is insufficient to support the non-movant's position (internal quotation marks omitted)); *Bickerstaff*, 196 F.3d at 446 (stating that courts must "carefully distinguish" evidence that "gives rise to mere speculation and conjecture" from evidence that gives rise to an inference of discrimination); *Edwards v. Metro-N. Commuter R.R. Co.*, 463 F. Supp. 2d 279, 283-84 (D. Conn. 2006) (holding that a lack of personal knowledge and direct evidence was fatal to plaintiff's claim to be similarly situated to comparators).

[7] Plaintiff testified that he learned about this inventory loss from an assistant manager. (Slivinski Decl. Ex. C, at 200.)

[8] Plaintiff initially alleged that Charlie Rodriguez was the manager in question (Slivinski Decl. Ex. E, at 2), but Quinones testified that she had never had an employee named Charlie Rodriguez and that Charlie Hernandez was the manager who had missing night deposits,

at 82-83.)  During a six-month period, two night deposits went missing under his watch.  (*Id.* Ex. 6, at 84.)  The first missing deposit occasioned an investigation that was inconclusive, and Hernandez was "addressed in writing."  (*Id.* Ex. 6, at 85.)  After the second missing deposit, another investigation occurred and Hernandez admitted to faking his employee's signature on the deposit report, but not to stealing the deposit.  (Votto Decl. Ex. 8, at D552.)  Hernandez was then fired.  (*Id.*)

Hernandez's case is not similar to Plaintiff's, though Plaintiff argues that it shows that, if he were Hispanic, Plaintiff would have been given a second chance.  (Pl.'s Mem. 7.)  This argument is unpersuasive.  The reason Hernandez was initially not terminated was insufficient evidence that Hernandez had engaged in wrong-doing.  (Wotorson Aff. Ex. 6, at 85.)  Once Defendant was satisfied that Hernandez had violated company policy, he was fired.  (Votto Decl. Ex. 8, at D552.)

### 3.  Plaintiff's Prima Facie Case of Racial Discrimination

Construing all the evidence in Plaintiff's favor, as is required at summary judgment, *see Sassaman*, 566 F.3d at 313, the evidence could be interpreted to show the following: (1) an inventory loss exceeding $5,000 occurred at Plaintiff's store; (2) Plaintiff did not put undue pressure on the sales associate to repay the value of the laptop theft, but Quinones did have a report stating that he had; (3) Plaintiff reported the laptop theft through informal means that had previously been acceptable but, for whatever reason, this time the report did not reach Quinones; and (4) Plaintiff did not perform cage counts for three months because he believed that Quinones had granted him permission to neglect them.  It is also conceivable that two of Plaintiff's

---

(Wotorson Aff. Ex. 6, at 82-84).

comparators further support a prima facie case, as they arguably were demoted for conduct that got Plaintiff fired.  *See id.* at 312-13 (finding a prima facie case when the employer had stated that "you probably did what [another employee] said you did because you're male"); *Schnable v. Abramson*, 232 F.3d 83, 87 (2d Cir. 2000) (finding a prima facie case of age discrimination merely because an older employee was replaced by someone significantly younger).  Plaintiff has demonstrated a prima facie case.

### C.  Burden-Shifting Analysis

Once Plaintiff has presented a prima facie case, the burden shifts to the Defendant to proffer race-neutral reasons for Plaintiff's termination.  *See Sanders*, 361 F.3d at 755.  Defendant has offered the reasons outlined above, and so the burden shifts back to Plaintiff to "prove that the defendants intentionally discriminated against [him] on a prohibited ground."  *Reg'l Econ. Cmty. Action Program v. Middletown*, 294 F.3d 35, 49 (2d Cir. 2002); *see also Dorcely v. Wyandanch Union Free Sch. Dist.*, — F. Supp. 2d —, No. 06-CV-1265, 2009 WL 3232866, at *14 (E.D.N.Y. Sept. 30, 2009) (requiring that a defendant "articulate[] 'clear and specific' reasons for . . . [the adverse employment action], supported by evidence 'which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action'" (quoting *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 133 (2d Cir. 2000)) (internal quotation marks omitted)).

Plaintiff "may establish pretext 'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" *Bang*, 600 F. Supp. 2d at 435 (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)); *see also Leibowitz*

*v. Cornell Univ.*, 584 F.3d 487, 504 (2d Cir. 2009) (stating that to defeat summary judgment on the grounds that an employer's proffered non-discriminatory reasons are pretextual, "plaintiff carries the ultimate burden of persuasion and must produce evidence such that a rational finder of fact could conclude that the adverse action taken against her was more likely than not a product of discriminatory animus"). Plaintiff seeks to meet this burden with the same arguments he used to meet his burden at the prima facie case stage.

Plaintiff's strongest argument is that the biggest error he committed was to have an inventory loss, and that two of his comparators had inventory losses but were only demoted instead of being terminated. When evaluating whether Plaintiff has met his burden, the Court pays particular attention to the fact that it is insufficient for Plaintiff to establish merely that he was fired due to error, mistake, or misunderstanding, because the Court does not sit as a review board for management decisions. *See Sassaman*, 566 F.3d at 314 ("As a general matter, . . . it is not the role of federal courts to review the correctness of employment decisions or the processes by which those decisions are made."); *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 103 (2d Cir. 2001) (noting that while "an employer's disregard or misjudgment of a plaintiff's job qualifications may undermine the credibility of an employer's stated justification . . . the court must respect the employer's unfettered discretion to choose among qualified candidates" (internal quotation marks and citations omitted)); *Dorcely*, 2009 WL 3232866, at *10 (noting that "the employer's burden of showing a legitimate nondiscriminatory reason for its actions is not a particularly steep hurdle. It is not a court's role to second-guess an employer's personnel decisions, even if foolish, so long as they are nondiscriminatory"). Plaintiff must show more than error; he must show discriminatory animus. *See Patterson*, 375 F.3d at 221 ("The ultimate

burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff . . . ." (internal quotation marks and citation omitted)); *Byrnie*, 243 F.3d at 103 (stating that "the discrepancy [between the employer's judgment and the facts] must bear the . . . burden of allowing a reasonable trier of fact to not only conclude the employer's explanation was pretextual, but that the pretext served to mask unlawful discrimination").

Plaintiff fails to meet his burden for several reasons.  First, it is wrong to argue that the only reason for his termination was his inventory loss.  Plaintiff indisputably was told he was fired for the combination of failing to properly report the laptop theft and inadequate cage counts, in addition to the substantial inventory loss.  Much of the factual underpinnings for these reasons came from Votto's investigations.  Even if Votto's reports were factually wrong about Plaintiff's mishaps, they concluded, among other things, that Plaintiff had improperly pressured a sales associate to pay a debt,[9] and that Plaintiff had failed to properly report the theft of a laptop or follow company inventory procedures.  (Votto Decl. Exs. 3-6.)  Plaintiff has never claimed that Votto's actions were motivated by racial animus, and an employer may rely on even erroneous information in making employment decisions, so long as it does so in good faith.  *See Adia v. MTA Long Island R.R. Co.*, No. 02-CV-6140, 2006 WL 2092482, at *9 (E.D.N.Y. July 26, 2006) (noting that even if the defendant's "investigation's findings [were] incorrect, when an employer relies on information in good faith in making an employment decision" the employer's decision is not pretextual); *Gorley v. Metro-N. Commuter R.R.*, No. 99-CV-3240, 2000 WL

---

[9]The improper pressure is not one of the reasons that Quinones gave for Plaintiff's termination, but Votto's report alleging the improper actions was available to her as relevant background information when making her decision.

1876909, at *7 (S.D.N.Y. Dec. 22, 2000) (noting that "[i]f the defendant relied upon the information in good faith, its dismissal of plaintiff would not violate Title VII"), *aff'd*, 29 Fed. App'x 764 (2d Cir. 2002); *Agugliaro v. Brooks Bros., Inc.*, 927 F. Supp. 741, 747 (S.D.N.Y. 1996) (noting that "[e]ven assuming defendants were wrong in their belief . . . what is significant [for the purposes of determining pretext] is that they based their decision to dismiss plaintiff on that belief"). Therefore, Plaintiff's alleged failure to properly report the laptop theft and his behavior towards the sales associate are valid reasons for both Defendant's termination of his employment and for distinguishing the comparators.

Second, the comparators are insufficient to get Plaintiff past summary judgment. To be helpful for Plaintiff, he must demonstrate "a reasonably close resemblance of the facts and circumstances of [P]laintiff's and the comparator[s'] cases." *Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000); *see also Galimore v. City Univ. of N.Y. Bronx Cmty. College*, 641 F. Supp. 2d 269, 283, 285 (S.D.N.Y. 2009) (holding that even though the comparators had a sufficiently "reasonably close resemblance of facts and circumstances" to meet plaintiff's prima facie burden, they "were [not] comparable to [p]laintiff in the most significant respect" and so did not demonstrate pretext); *Babcock v. N.Y. State Office of Mental Health*, No. 04-CV-2261, 2009 WL 1598796, at *10, *12 (S.D.N.Y. June 8, 2009) (stating that it was plaintiff's "burden to show that he is similarly situated to [the comparator]" and requiring "a reasonably close resemblance of facts and circumstances of plaintiff's and comparator's cases" (internal quotation marks omitted)); *Edwards*, 463 F. Supp. 2d at 283 & n.1 (requiring that plaintiff and comparators be "similarly situated in all material respects," which "must be judged based on (1) whether the plaintiff and [the comparators] were subject to the same workplace standards and (2) whether the

conduct for which the employer imposed discipline was of comparable seriousness" (internal

quotation marks and emphasis omitted)).  Aside from the lack of admissible evidence about

them, Malpica's and Martinez's cases differ from Plaintiff's because they used the appropriate

means to report and trace their inventory losses and did not improperly pressure any of their

subordinates.  Malpica and Martinez also had fewer marks against them and were demoted rather

than fired.  Hernandez's case differs from Plaintiff's case in every way except that, like Plaintiff,

Hernandez ultimately was terminated.  Thus, there is no "reasonably close resemblance"

between Plaintiff's case and the comparators' cases, and so no inference of discriminatory intent

or pretext is supported by their comparison.

      In sum, Plaintiff has not shown that Quinones should not, or could not, have honestly

relied on Votto's reports.  The reports provided ample justification for Plaintiff's termination and

for distinguishing between Plaintiff's case and that of the comparators.  Therefore, Plaintiff has

not demonstrated that Defendant's termination of his employment was based, even in part, on

racial discrimination, or that Defendant's stated reasons for Plaintiff's termination were

pretextual.

      Finally, Plaintiff has failed to identify any other evidence of racial (or national-origin)

discrimination.  Plaintiff does not contend that his race was discussed in any way by Quinones,

or by anybody responsible for his termination, nor has he offered any evidence that he was

subjected to race-related comments by anyone else.  Moreover, though there is no evidence in

the record establishing who hired Plaintiff, the record does establish that Plaintiff was replaced

by an African-American employee (Pl.'s 56.1 Stmt. ¶ 20), strongly undercutting any evidence of

discrimination.  *See Yarde*, 360 F. Supp. 2d at 560 (noting that the fact that a plaintiff's

replacement is of the same race as the plaintiff "'weighs heavily against the inference' of

discrimination" (quoting *Montanile v. Nat'l Broad. Co.*, 211 F. Supp. 2d 481, 487 (S.D.N.Y.

2002), *aff'd*, 57 Fed. App'x 27 (2d Cir. 2003))).[10]   In the end, the decision to fire Plaintiff was

not made in a vacuum as, even taking Plaintiff's version of events, he had sustained an inventory

loss, and Quinones had Votto's report stating that Plaintiff had failed to properly report the

laptop theft.   (Votto Decl. Exs. 3-6); *see Adia*, 2006 WL 2092482, at *9 (noting that employers

may rely on factual errors if done in good faith).   Thus, Plaintiff has failed to meet his burden of

showing discriminatory animus, and the Court therefore grants summary judgment for the

Defendant.   *See Schnable*, 232 F.3d at 91 (holding that summary judgment was appropriate

where the plaintiff's membership in a protected class was not discussed by his employers,

plaintiff was subject to no discriminatory comments, plaintiff was fired by the same man who

hired him, and the decision to fire plaintiff "was not made in a vacuum").

---

[10]There is no evidence in the record directly stating that Quinones was responsible for hiring Plaintiff's replacement, though Defendant implies it (Def.'s Mem. 13-14), and Plaintiff does not contradict Defendant, (*see generally* Pl.'s Mem.).   If Quinones was not responsible for hiring Plaintiff's replacement, a somewhat weaker, but still relevant, "same actor inference" can be found in the record.   During the period from 2003 to 2006, eight African-American managers (including Plaintiff) reported to Quinones.   (Decl. of Robert Ayers in Supp. of Def.'s Mot. for Summ. J. ¶¶ 1-2.)   In 2006, five managers were terminated: Plaintiff and four who were Hispanic.   (*Id.* ¶¶ 3-4.)   Plaintiff has not pointed to any evidence of racial discrimination directed against the other African-American managers (who were not fired), and the fact that 80% of the managers who were fired in 2006 were Hispanic is hardly evidence that Quinones favored Hispanic employees.

### III.  Conclusion

For the reasons stated above, Defendant's Motion for Summary Judgment is granted.

The Clerk of the Court is respectfully requested to terminate the motion (Dkt. No. 24), enter

judgment for Defendant, and close this case.

SO ORDERED.

Dated:       March 11, 2010
             White Plains, New York

_____

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

22

Service List (via ECF):

Ambrose Wotor Wotorson, Jr, Esq.
Law Offices of Ambrose Wotorson
26 Court Street, Suite 1811
Brooklyn, New York 11242
loaww1650@aol.com

Patrick Michael Stanton, Esq.
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
10 Madison Avenue, Suite 402
Morristown, New Jersey 07960
patrick.stanton@ogletreedeakins.com